Ruth KORN, individually and as executrix of the Estate of Ben Korn, deceased, on behalf of herself and all other Purchasers and Holders of Limited Partnership Interests in 63 Wall Associates similarly situated, Plaintiff-Appellant,

v.

FRANCHARD CORPORATION et al., Defendants-Respondents,

and

Murray Wechsler, et al., Intervening Plaintiffs.

Madeline MILBERG, Plaintiff,

v.

WESTERN PACIFIC RAILROAD COMPANY, and Dow Jones & Company, Inc., trading under the name of Barron's Weekly, Defendants.

Docket 35578, 71–1221.

United States Court of Appeals, Second Circuit.

Argued March 29, 1971.

Decided May 20, 1971.

Friendly, Circuit Judge, concurred and filed opinion.

George A. Weissblum, Yonkers, N. Y., for intervening plaintiffs Morris Weissblum, Henrietta Weissblum, Jack Edelman, Flo Edelman, Benjamin Edelman, Sylvia Edelman and Celia Diamond.

Lifshutz & Kahn, Gerald Kahn, New York City, for intervening plaintiff Murray Wechsler.

Avrom S. Fischer, Brooklyn, N. Y., for plaintiff-appellant Madeline Milberg.

Olwine, Connelly, Chase, O'Donnell & Weyher, John Logan O'Donnell, James E. Tolan, New York City, for defendant Western Pacific Railroad Co.

Patterson, Belknap & Webb, Robert D. Sack, New York City, for defendant Dow Jones & Co., Inc.

Herbert Brownell, New York City (Lord, Day & Lord, Wendell Davis, Jr., New York City, on the brief), for plaintiff-appellant Ruth Korn.

George A. Spiegelberg, New York City (Fried, Frank, Harris, Shriver & Jacobson, New York City, on the brief), for defendants-appellees Louis A. Siegel and Seymour Young.

Simpson Thacher & Bartlett, Peter J. Schlesinger, New York City, for defendants Franchard Corp. and Glickman Servicing Corp.

Before LUMBARD, Chief Judge, FRIENDLY and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

In these two cases we have the threshold issue whether an order denying class suit designation is appealable. Accordingly, after hearing argument in each case on a motion to dismiss raising that issue, we consolidated the motions for the purpose of decision. In the first case, Ruth Korn sues individually and as executrix of the estate of Ben Korn, for alleged violations of the federal securities acts, the New York State General Business Law, and the common law.[1] Defendants are Franchard Corporation, several of its officers and directors, and a related corporation. In the second case, Madeline Milberg similarly alleges violation of federal law and common law fraud against Western Pacific Railroad Company and Dow Jones & Company, Inc., as the publisher of Barron's Weekly. For reasons set forth below, in Korn v. Franchard Corp. we hold that the appeal may continue, and in Milberg

1. When the complaint was filed in 1967, Ben Korn was alive and a plaintiff in his own name. Future references in the opinion will be to only Ruth Korn as plaintiff.

v. Western Pacific R. R. we dismiss the appeal.

## I.

The gravamen of the complaint in *Korn* is that plaintiff and the members of the purported class purchased interests in 63 Wall Associates, a New York limited partnership, in reliance upon an allegedly misleading prospectus issued by defendants. The average investment of the over 1,000 class members was $5,000. Mrs. Korn and her husband purchased two "units" at a cost of $10,-000, which have not been sold.

In March 1970, the United States District Court for the Southern District of New York, Walter R. Mansfield, J., conditionally granted plaintiff's motion for class suit designation under Fed.R.Civ.P. 23(c) (1). Pursuant to the court's ruling, 50 F.R.D. 57, a notice and "Proof of Claim" was mailed to members of the prospective class. On the basis of the returns, defendants moved that the class suit designation be revoked. In October, Judge Mansfield held, CCH Fed.Sec.L. Rep. ¶92,845 at 90,167, that:

> Now that we have received the additional information resulting from the notice to investors we do not believe that the number of claimants is sufficiently numerous to render impracticable their joinder as individual plaintiffs. Furthermore, we do not believe that plaintiffs' interests are typical of the proposed class or that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The judge also criticized the attorney for plaintiff,[1a] concluding that he "would not fairly and adequately protect the interests of the proposed class." *Id.* at 90,169. Accordingly, on November 4, 1970, an order was entered withdrawing

the class suit designation, and directing defendants to notify the investors that they could intervene as individual plaintiffs by filing a notice and pleading, with designation of counsel.[2] Plaintiff Korn appeals from that order.

The second case before us, Milberg v. Western Pacific, is based upon a May 19, 1969 article in Barron's Weekly, published by defendant Dow Jones, which contained what proved to be an overly optimistic prediction of what the current quarter net earnings of defendant Western Pacific would be. According to plaintiff Madeline Milberg: This false information influenced the general market climate; she purchased 65 shares of Western Pacific common stock at a cost of $2,299.38; and the value of her stock dropped precipitously when the actual earnings of Western Pacific turned out to be far below the estimate. Plaintiff's theory is that either Barron's or Western Pacific made the statement "with careless, reckless, and wanton disregard as to * * * truth or falsity." Plaintiff still owns her stock.[3] In March 1970, plaintiff commenced her action in the United States District Court for the Southern District of New York. In November, plaintiff moved for an order of class action designation, with the class defined as all persons who bought common stock of Western Pacific between May 19, 1969 and July 31, 1969 in reliance upon the Barron's article or the market climate induced thereby. Citing Dolgow v. Anderson, 43 F.R.D. 472 (E. D.N.Y.1968), Judge Croake denied the motion because plaintiff failed to "make a preliminary showing that there is a substantial possibility of success." 51 F.R.D. 280, 282. He viewed plaintiff's claim as

> attempting to * * * establish a new rule of law to the effect that, when a financial publication prints an

---

1a. Plaintiff's attorney in the district court was not the attorney who represents her on appeal.

2. Subsequently, eight plaintiffs, owning a total of ten units, were allowed to intervene.

3. A week before plaintiff purchased her stock, her husband Lawrence purchased 500 shares of the same stock at a cost of approximately $19,000. He subsequently sold it for $11,437.35.

estimate of a company's earnings, the company must earn at least that amount or both the publication and the company will be held strictly liable for any loss in market value of the stock after the date when the estimate is printed. This would be a most unusual rule of law to say the least.

\* \* \*

*Id.* From the order denying class suit designation this appeal followed.

## II.

■ If the district judges in these cases had dismissed both the class suit allegations and the complaint itself, each judgment would clearly have been final and appealable as of right under 28 U. S.C. § 1291. However, in each case the order under attack affected only the class suit aspect of the complaint and allowed the named plaintiff to continue to press her individual claim. The question whether an appeal may nevertheless be taken from such an order has been the subject of a number of opinions in this court. In Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2d Cir. 1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967), we denied a motion to dismiss an appeal from a district court order dismissing a class action, which alleged antitrust and securities act violations. In that case, plaintiff Eisen sued both for himself and on behalf of all odd-lot purchasers and sellers on the Exchange. Eisen's individual claim for damages amounted to only $70, and we noted, 370 F.2d at 120–21:

> We can safely assume that no lawyer of competence is going to undertake this complex and costly case to recover $70 for Mr. Eisen.
>
> \* \* \* \* \* \*
>
> Dismissal of the class action in the present case, however, will irreparably harm Eisen and all others similarly situated, for, as we have already noted, it will for all practical purposes terminate the litigation. Where the effect of a district court's order, if not

reviewed, is the death knell of the action, review should be allowed.

The appeal was allowed to continue, and we eventually reversed the district court order and directed an evidentiary hearing on the advisability of a class action. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968).[4]

In Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), the issue again arose in the context of a claimed federal securities act violation, which allegedly caused plaintiff Green and the members of the supposed class to pay too much for publicly traded securities. Green himself had purchased only 100 shares of stock at $10¼ a share for a total price of $1,-042.27 (including commissions). He alleged that the "unmanipulated value" of the stock was between $1 and $2½. We assumed that "the total damage to Green is thus less than $1,000." 406 F.2d at 295. On the issue of appealability we then held:

> [T]he order striking the class action aspects of the complaint is appealable at this time, since if a class action is not permitted the litigation will very likely terminate without reaching the merits. \* \* \* Green obviously does not intend to press what will probably be an enormously complex and expensive action to recover less than $1,000. [Citation omitted.]

Since the question of appealability first arose during consideration of the full appeal on the merits, we went on to consider the propriety of the district court order striking the class action allegations. On that issue, we reversed the district court and held the case a proper one for class action.

In two more recent decisions, however, we dismissed appeals from orders refusing class suit designation. City of New York v. International Pipe & Ceramics Corp., 410 F.2d 295 (2d Cir. 1969), was an antitrust action in which New York City alone alleged treble damages of

---

4. Further developments in the litigation are reported at 50 F.R.D. 471 (S.D.N.Y.1970).

over $1,560,000. Upon a motion to dismiss, we held that the "death knell" rule did not apply because the City and various intervenors had "adequate resources to continue the action and with substantial amounts at stake will undoubtedly carry on." *Id.* at 299. We also noted that "some 66 other actions," presumably similar, were pending. Accordingly, we granted the motion.

The issue came up again in Caceres v. International Air Transport Association, 422 F.2d 141 (2d Cir. 1970), which also involved antitrust claims. In that case, we pointed out that the average claim alleged was $150,000 per member of the class and agreed with the district court's conclusion that no claim was of "such a low order of magnitude that it would be unfeasible or uneconomic for the claimant to seek redress." *Id.* at 144. Accordingly, we dismissed the appeal. Accord, Weingartner v. Union Oil Co., 431 F.2d 26 (9th Cir. 1970), cert. denied, 400 U.S. 1000, 91 S.Ct. 459, 27 L.Ed.2d 451 (1971).

■■ In *Caceres*, a little over a year ago, we reviewed the cases and underlying policies involved, and we see no need for further extended discussion of either. We adhere to the view: "that――absent the 'death knell' rationale relied on in *Eisen*—orders striking class suit allegations are not appealable" as final orders under 28 U.S.C. § 1291. 422 F.2d at ·143. Moreover, for the reasons stated in *Caceres*, we do not think that the doctrine should be too liberally applied. It is true that we there conceded that the arguments for a rule of broad appealability from refusals to designate a class are "not without force." *Id.* See also Note, Interlocutory Appeals from Orders Striking Class Action Allegations, 70 Colum.L.Rev. 1292 (1970). But the logical end of such arguments is, as we noted in *Caceres*, "that an order refusing class action treatment * * * should almost always be appealable." 422 F.2d at 143. This runs directly contrary to the policy of the final judgment rule embodied in 28 U.S.C. § 1291 and the sound reasons for it, including the following:

> an appellant's ultimate right of review upon an appeal from a final judgment in the action; * * * the potential for harassment of litigants by nuisance appeals, and the fact that any appeal tends to delay or deter trial or settlement of a lawsuit. * * *

American Express Warehousing, Ltd. v. Transamerica Insurance Co., 380 F.2d 277, 280 (2d Cir. 1967). Moreover, the federal courts of appeals are now being overwhelmed by an unprecedented number of appeals,[5] which augurs ill for the speedy resolution of the rights of those complaining of concededly appealable judgments and lessens the time so badly needed for the consideration and decision of such cases.[6] It may be, as Judge Friendly indicates in his concurring opinion, that experience will show that the "death-knell" rule is not "truly workable," and that we may have to formulate a different rule that might also deal with attempts by defendants to appeal from class suit designations, an issue not now before us. We express no view as to these possibilities other than to say that at the present time we are not persuaded that we should reconsider our precedents and augment the onrushing tide of appeals. Cf. West v. Zurhorst, 425 F.2d 919 (2d Cir. 1970);

5. In 1970, 11,662 appeals were filed in the 11 courts of appeals. This was a 14% increase over the 10,248 appeals filed in 1969 and almost a 200% increase over the 3,889 appeals filed in 1960. Similarly, cases disposed of by the courts of appeals after hearing or submission rose from 2,681 in 1960 to 6,139 in 1970, an increase of 129%. During the same decade, however, the number of circuit judgeships increased only 43%, from 68 in 1960 to 97 in 1970. See The Annual Reports of the Director of the Administrative Office of the United States Courts for fiscal 1960, Table B-1, and for fiscal 1970, II-3 to II-5 (mimeograph).

6. Carrington, Crowded Dockets and the Courts of Appeals: The Threat to the Function of Review and the National Law, 82 Harv.L.Rev. 542 (1969).

Donlon Industries, Inc. v. Forte, 402 F. 2d 935 (2d Cir. 1968).

Our lack of enthusiasm for generous appealability of orders refusing class suit designation implies no hostility to the changes in Rule 23, which we have characterized elsewhere as "far reaching and beneficial." *Caceres, supra,* 422 F. 2d at 144. On the contrary, we believe that we can rely on the good judgment and discretion of the district judges to apply amended Rule 23 fairly and sensibly. There may be a few cases in which error will occur, but it should be remembered that many class suit requests will arise in a context in which preliminary injunctive relief may frequently be sought, e. g., civil rights or welfare cases. In such instances, an early appeal from the substantive ruling on the appropriateness of preliminary relief is available,[7] at which time the appellate court may well choose to review the class suit ruling as well. Cf. Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426 (2d Cir. 1967); Hurwitz v. Directors Guild of America, Inc., 364 F.2d 67 (2d Cir.), cert. denied, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966); Brunson v. Board of Trustees, 311 F.2d 107 (4th Cir. 1962), cert. denied, 373 U.S. 933, 83 S.Ct. 1538, 10 L.Ed.2d 690 (1963); 9 J. Moore, Federal Practice ¶ 110.25[1] (2d ed. 1970). Moreover, in any case where a plaintiff simply cannot continue his law suit alone, the "death knell" doctrine will provide immediate review of a refusal of class suit designation. Short of that, at the present time we believe that we should allow the case to take its normal course in the district court.

7. E. g., under 28 U.S.C. §. 1292(a) (1).

8. The eight intervenors own ten units so their total "actual losses" would be $1,930.

9. Plaintiff's Memorandum at 20, 38. For comment on possible issues raised in this appeal see Note, The Impact of Class Actions on Rule 10b-5, 38 U.Chi.L.Rev. 337, 351-55 (1971).

III.

■ Turning from these general principles· to the cases at hand, we believe we have no choice but to allow the appeal in *Korn.* Defendants argue that plaintiff valued her damages expansively in earlier stages of the litigation and this appears to be so. However, it seems undisputed that after plaintiff filed her action, the partnership property of 63 Wall Associates was sold, and distributions were made to investors. As a result, according to plaintiff's papers before us, the "actual losses" are now only $193 per unit, or a total of $386 for the two units involved. We do not see how this plaintiff can be treated differently on the issue of appealability from the plaintiff in *Green,* whose individual damages were greater. It is true that there are a few interveners here, see note 2 *supra,* but their per unit damage would be no greater.[8] We are convinced that at this stage Mrs. Korn's action will go no further without class suit designation. Accordingly, we deny the motion to dismiss the appeal. We do not pass upon the merits of Judge Mansfield's order, since, as plaintiff points out to us, those issues have not been thoroughly briefed or argued by the parties.[9]

■ We reach a contrary conclusion in *Milberg.* While it is true that plaintiff Madeline Milberg's individual claim, according to her papers, is about $1,-000,[10] we refuse to look at her suit through blinders. The papers make clear that plaintiff's husband, who signed her complaint as attorney,[11] has a claim for at least $7,500, so that the combined claim is at a minimum about $8,500. That figure is close enough to the fed-

10. This figure varies in the papers before us. Computing from the complaint, it is $1,060; in the plaintiff's memorandum, it is $999; and in Western Pacific's memorandum, it is $1,850. We do not believe these differences to be controlling in this case.

11. Plaintiff's husband, however, has not served as counsel for this appeal.

eral jurisdictional minimum for certain types of cases [12] to suggest that it is sufficient incentive to keep a case alive. The $10,000 jurisdictional minimum impliedly recognizes that a plaintiff with damages close to that amount would find it worthwhile to litigate. Otherwise, the minimum would serve no purpose. Accordingly, we do not believe that the "death knell" doctrine is properly applicable here.

Plaintiff Milberg claims that the issues in the action are so complicated that no competent counsel would handle the case for her and her husband alone. While we agree that complexity of the case is a relevant factor in deciding whether to apply the death knell doctrine, we do not accept plaintiff's argument. For a securities act case, the factual issues seem remarkably simple, related to one statement published in Barron's. Plaintiff also suggests that we should allow review because there is a conflict in the districts over whether a party seeking class designation must make a preliminary showing of substantial probability of success. Compare Dolgow v. Anderson, 43 F.R.D. 472, 488, 501–503 (E.D.N.Y.1968),[13] with Mersay v. First Republic Corp., 43 F.R.D. 465 (S.D.N.Y.1968); cf. Green v. Wolf Corp., *supra,* 406 F.2d at 301–302 n.15. While we agree that the issue is significant, for reasons already given we do not consider it at this stage of the litigation.

Motion to dismiss denied in *Korn;* motion to dismiss granted in *Milberg.*

FRIENDLY, Circuit Judge (concurring):

Since I regard Judge Feinberg's opinion as correctly applying the present law in this circuit, I concur therein. However, despite the obvious appeal of the "death-knell" doctrine, I am not sure it affords a rule that is truly workable or, indeed, is legally sustainable. If my fears should be realized, I might wish on some subsequent occasion to request that the court consider *in banc* whether we are not obliged to formulate a rule that will avoid the necessity of making such *ad hoc* judgments as have been required in these and other cases and also will afford equality of treatment as between plaintiffs and defendants. Perhaps, before occasion for doing this should arise, we shall have received enlightenment from the Supreme Court.

---

12. E. g., 28 U.S.C. § 1332 (diversity).

13. For later developments, see Dolgow v. Anderson, 438 F.2d 825 (2d Cir. 1970), modified on rehearing (2d Cir. Jan. 18, 1971).