John E. and Darlene K. HOOLEY, husband and wife, and all others similarly situated, Plaintiffs-Appellants,

v.

RED CARPET CORPORATION OF AMERICA et al., Defendants-Appellees.

Stephen H. MARKS, Plaintiff-Appellant,

v.

SAN FRANCISCO REAL ESTATE BOARD et al., Defendants-Appellees.

Nos. 75-2269 and 75-3373.

United States Court of Appeals, Ninth Circuit.

Jan. 21, 1977.

Rehearing and Rehearing En Banc Denied March 23, 1977.

Andrew D. Hurwitz, Phoenix, Ariz. (argued), Lovitt, Hannan & Hennigan, San Francisco, Cal., for plaintiffs-appellants in 75–2269.

Josef D. Cooper (argued), Cooper & Scarpulla, San Francisco, Cal., for plaintiff-appellant in 75–3373.

James H. Clarke (argued), Portland, Or., for defendants-appellees in 75–2269.

Moses Lasky (argued), Brobeck, Phleger & Harrison, M. Laurence Popofsky (argued), Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants-appellees in 75–3373.

Before SNEED and KENNEDY, Circuit Judges, and RICHEY,* District Judge.

SNEED, Circuit Judge:

Plaintiffs appeal under 28 U.S.C. § 1291 from orders of the United States District Courts for Oregon and the Northern District of California refusing to certify their actions as class actions. We hold that, under this court's recent decision in *Share v. Air Properties G. Inc.,* 538 F.2d 279 (9th Cir. 1976), appellate jurisdiction has not been demonstrated. We therefore dismiss the appeals with the understanding that plaintiffs in both cases will be provided the opportunity to establish in the district courts below that the "death knell" has sounded for their actions.

## I.

Both of the two actions consolidated for this appeal were brought by sellers of real estate against numerous realty companies and realtor boards, charging that the defendants had conspired to fix real estate commissions in violation of the Sherman Act. *Hooley* involves a potential class of from 10,000 to 30,000 individuals who sold homes in the Tri-County area surrounding Portland, Oregon from 1970 to 1973; plaintiffs seek both injunctive relief and treble damages. After allowing for discovery on the class action issue, the District Court for Oregon denied the plaintiffs' motion for class certification in an order of April 1, 1975. *Marks* is a treble damage action involving a potential class of up to 13,000 persons who purchased residential real property in Marin County, California during the period of limitations. After full discovery on the class action issue and partial discovery on the merits of the antitrust action, the District Court for the Northern District of California, on February 24, 1975, decertified the class that it had conditionally certified earlier.

■ We noted in *Share* that if, after denial of certification, "*any* member of the purported class proceeds in an individual action, the class certification can be challenged on appeal by other members of the class, named or unnamed." 538 F.2d at 282–83 (emphasis in original). Thus, if "any member of the purported class possesses a cause of action which is viable if brought individually," the death knell of the action has not sounded and "an order of the trial court denying class certification does not constitute an appealable order." *Id.* at 283.

## II.

Appellants urge us to limit *Share* to its facts. In *Share,* they point out, a named plaintiff had a claim of at least $17,000 which would justify the cost of separate litigation while here none of the named plaintiffs have actions for more than approximately $1,000 (before trebling). Appellants argue that the language in *Share,* conditioning the death knell doctrine on the absence of *any* member of the purported

* Honorable Mary Anne Richey, United States District Judge for the District of Arizona, sitting by designation.

class whose claim would justify individual action, should be treated as dictum, unnecessary to the disposition of that case and not applicable to facts of this case. We decline to so limit *Share.*

■ Our adherence to *Share* is proper because, as emphasized in *Share,* to recognize the death knell appeal at all is to "compromise our usual notions of appropriateness for review." 538 F.2d at 282. The death knell doctrine is not designed to facilitate immediate review of refusals to certify an action as a class action. It is to make certain that the refusal to certify does not deprive the members of the purported class of an opportunity for review in due course of the refusal on appeal. All opportunity for such review is destroyed if the refusal will have the practical effect of terminating all effort by anyone to assert the particular cause of action involved and to preserve for review on appeal the allegedly erroneous refusal to certify. To determine whether such destruction has occurred requires an examination not limited to named plaintiffs.

Our adherence to *Share* is strengthened when we consider the ease with which the death knell could be made to toll by designating as named plaintiffs only those whose individual claims would not warrant the cost of separate litigation. By careful selection of named plaintiffs the policy against interlocutory appeals could be frustrated easily. This policy, also reflected in *Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976), should not be subject to such manipulation.

■ We acknowledge freely that our language in *Share* is not intended to make the death knell doctrine illusory. Thus we do not require proof to a certainty that not a single member of the purported class has a claim which would make feasible the pursuit of relief by separate litigation. What we do require is that the plaintiff seeking class certification demonstrate, and the district court find, that it is highly unlikely that any member of the purported class has a claim justifying separate litigation.[1]

■ This demonstration need not require "extended and complicated evidentiary hearings," as the appellants suggest, because the discovery designed to justify class certification in many instances will reveal the required information. The effort to obtain class certification frequently will reveal the approximate mean or median claim of members of the purported class. This information may be sufficient to resolve the death knell issue.[2] Where doubt remains the trial judge is free to consider the extent

---

1. As outlined in *Developments in the Law—Class Actions,* 89 Harv.L.Rev. 1318, 1356 (1976), class actions typically aggregate three types of individual claims: claims that are non-viable even when brought as part of a class, individually nonrecoverable claims, and individually recoverable claims. Within this scheme, it is the total absence within a purported class of individually recoverable claims that brings into play the death knell doctrine.

While a finding by the trial court that the death knell has rung will function somewhat as certification under 28 U.S.C. § 1292(b), the approach by the trial court under the death knell doctrine is quite different from that employed in determining whether to certify. Nonetheless, certification constitutes a route that the trial court might find preferable to the inquiry required by the death knell doctrine.

2. As we noted in *Share,* the "average" or "typical" claim is not the *ultimate* variable in determining whether or not the death knell of an

action has rung. 538 F.2d at 282. However, the mean or median claim will frequently show that claims justifying separate litigation do exist within the purported class.

Even where a court decides that a relatively detailed examination of individual claims is necessary to decide the death knell question, additional discovery may be either unnecessary or relatively simple. Thus, in the instant cases, plaintiffs contend that a free market real estate commission would have stood at three to four percent for the areas and years in issue. Taking these contentions as assumed, the district courts can easily determine approximate damages once they are told the percentage and absolute commissions paid by the members of the purported class. In *Marks,* such information apparently has already been compiled. Appellant's Brief, at pp. 10–11. In *Hooley,* the information is readily available from the files of defendants. Appellants' Reply Brief, at p. 14 & n.4.

to which members, other than the named plaintiffs, of the purported class have manifested an interest in the litigation. Disinterest, however, may indicate a lack of confidence on the part of many in the merits; it does not always mean that no individual member would consider an individual action. In addition, the trial judge in his discretion may direct that a representative sample of the members of the purported class be notified of the pendency of the death knell issue and requested to respond to such questions as he believes would be helpful in resolving the death knell issue.[3]

■ We reiterate that the burden is on the named plaintiffs to demonstrate that the death knell is applicable. The magnitude of this burden is justified by the exceptional character of the doctrine. Moreover, one who seeks to litigate on behalf of many others should not complain when *his* assertions with respect to *their* intentions not to pursue *their* claims individually are tested before being accepted.

■ *Share* having been decided subsequent to the district court orders appealed from in these cases, plaintiffs were not on notice of the necessity to make the death knell showing elaborated above. We therefore dismiss these appeals on the understanding that plaintiffs will have an opportunity in district court to make such proof.

Appeal Dismissed.

3. Our emphasis in the text on the size of the individual claims and the interest manifested generally by nonnamed members of the purported class should not be read to imply that

these are the only relevant considerations in determining whether the death knell has tolled. *See generally Gosa v. Securities Investment Co.,* 449 F.2d 1330, 1332 (5th Cir. 1971).