Cecil **LIVESAY** and Dorothy Livesay, for themselves and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

**PUNTA GORDA ISLES, INC. et al.,** Defendants-Appellees.

Cecil **LIVESAY** and Dorothy Livesay, for themselves and on behalf of all others similarly situated, Petitioners,

v.

**PUNTA GORDA ISLES, INC. et al., Respondents.**

Nos. 76–1881, 76–1906.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1977.

Decided March 4, 1977.

---

11. We note that the administrative law judge reduced the back pay of ten discriminatees for numerous reasons.

Melvyn I. Weiss, New York City, for appellants; Richard L. Ross, Clayton, Mo., on brief.

John J. Hennelly, Jr., St. Louis, Mo., for appellee, Coopers & Lybrand; Veryl L. Riddle and Thomas C. Walsh, St. Louis, Mo., on brief.

William A. Richter, St. Louis, Mo., for appellees, Punta Gorda Isles and others; Lewis R. Mills and Karen Holm, St. Louis, Mo., on brief.

## PETITION FOR WRIT OF MANDAMUS

Before HEANEY and STEPHENSON, Circuit Judges, and STUART,* District Judge.

STEPHENSON, Circuit Judge.

In these consolidated cases, Cecil and Dorothy Livesay (plaintiffs) seek review of the district court's order decertifying their action as a class action. In No. 76–1881, plaintiffs appeal from that order. In No. 76–1906, plaintiffs seek a writ of mandamus compelling the district court to vacate its decertification order.

On July 27, 1973, plaintiffs filed a complaint seeking approximately $2650 in individual damages resulting from their purchase of $5000 worth of debentures and 100 shares of common stock issued by Punta Gorda Isles, Inc. (Punta Gorda), a Florida land development corporation, pursuant to a registration statement and prospectus dated May 2, 1972. The essence of plaintiffs' claim was that the prospectus and registration statement contained materially misleading statements and omissions.[1] The named defendants were Punta Gorda, certain individuals who were officers and directors of Punta Gorda, and the accounting firm of Coopers & Lybrand (Coopers),

---

* The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa, sitting by designation.

1. Essentially, the complaint alleges: (1) a failure to disclose that new accounting rules of the American Institute of Certified Public Accountants would require an adverse restatement of earnings for 1967–1972; (2) a failure to disclose that the earnings consisted of installment sale contracts where cash would not be received until future dates; (3) a misleading statement of the ratio of earnings to fixed charges because not based on actual cash flow; and (4) a failure to disclose that certain Florida ecological regulations would seriously impede Punta Gorda from developing artificial waterfront property.

which had certified the financial statements in the registration statement and prospectus. Plaintiffs sought to represent a class of approximately 1,800 persons who had purchased securities at the May 2, 1972, public offering.

On April 9, 1974, plaintiffs moved pursuant to Fed.R.Civ.P. 23 to have the action certified as a class action. On May 13, 1974, the district court granted Coopers' motion for a stay of all discovery except discovery relating to the class action determination. On June 24, 1974, oral argument on the class action certification motion was held. On July 16, 1974, the district court denied Coopers' motion to strike the class action allegations in the complaint, but did not at that time certify the class. On September 23, 1974, the district court denied plaintiffs' motion to lift the stay on substantive discovery.

On November 1, 1974, plaintiffs filed a petition for a writ of mandamus in this court, requesting that the district court be ordered to lift the stay on substantive discovery. This court denied the petition by order dated November 15, 1974, but expressed the view that plaintiffs should request a prompt ruling on their motion for class action certification and that the district court should promptly rule on the motion and thereafter permit discovery on the merits. *Livesay v. Punta Gorda Isles, Inc.,* No. 74–1827 (8th Cir., November 15, 1974).

On December 30, 1974, an evidentiary hearing on the class action certification motion was held in the district court. On June 19, 1975, the district court entered an order certifying the action as a Rule 23(b)(3) class action, which order expressly found plaintiffs to be adequate class representatives. The order also held that plaintiffs' counsel had a conflict of interest because he had represented one of the underwriters of the Punta Gorda offering on unrelated matters. The order deemed this conflict serious because none of the underwriters had been joined as defendants in the plaintiffs' suit. Plaintiffs' counsel withdrew, and on June 30, 1975, plaintiffs' current counsel entered its appearance.

On July 25, 1975, plaintiffs moved to dissolve the stay on substantive discovery. Coopers opposed the motion and sought a reconsideration of the order certifying the action as a class action. On October 23, 1975, the district court denied plaintiffs' motion to dissolve the stay. In its order, the district court expressed concern about the adequacy of plaintiffs as class representatives, based largely on plaintiffs' failure to join any underwriters as defendants. The court did not, however, decertify the class action at that time, because it believed that such decertification might jeopardize the claims of absent class members. The court directed the parties to prepare forms of notice of the pendency of the class action to be mailed to the class members and also lifted the stay on discovery to the extent that plaintiffs could seek the names and addresses of the class members. The parties submitted proposed forms of notice in November 1975.

On March 1, 1976, the district court mailed to the parties its proposed form of notice. Both parties submitted suggested changes, and on April 9, 1976, the district court mailed to the parties the final form of notice.

On April 20, 1976, plaintiffs' counsel telephoned counsel for Punta Gorda and requested the names and addresses of the initial registered owners (after the underwriters) of the debentures and common stock sold pursuant to the May 2, 1972, registration statement. By letter dated April 21, 1976, Punta Gorda's counsel declined to furnish that information.

On July 9, 1976, plaintiffs requested the district court to conduct a conference for the purpose of discussing the issues involved in discovery of the names of class members. On July 20, 1976, plaintiffs served defendants with a motion to produce the names and addresses of the initial registered owners of the stock and debentures. On July 23, 1976, Coopers filed a motion to decertify the action as a class action. On July 26, 1976, the conference requested by plaintiffs was held at which the district court ordered the parties to submit briefs,

etc. in support of the various pending motions.

On September 1, 1976, the district court issued a memorandum and order decertifying the class action. The court found that plaintiffs had inordinately delayed in prosecuting the case and were thus not adequate class representatives. The order also lifted the stay on substantive discovery. Subsequently, both parties have engaged in some discovery on the merits. Plaintiffs now seek review of the September 1 decertification order by direct appeal (No. 76–1881) and by a petition for a writ of mandamus (No. 76–1906).

■ We are confronted with the threshold issue of our jurisdiction to hear an appeal from the district court's order decertifying the lawsuit as a class action. Defendants allege that the order is not a final order which is appealable under 28 U.S.C. § 1291. We disagree.

■ Orders denying class action certification are reviewable under 28 U.S.C. § 1291 if they sound the "death knell" of the action. *See, e. g., Share v. Air Properties G. Inc.,* 538 F.2d 279, 282 (9th Cir.), *cert. denied sub nom., Woodruff v. Air Properties G. Inc.,* 429 U.S. 923, 97 S.Ct. 321, 50 L.Ed.2d 290 (1976); *Ott v. Speedwriting Pub. Co.,* 518 F.2d 1143, 1146–49 (6th Cir. 1975); *Williams v. Mumford,* 167 U.S.App. D.C. 125, 511 F.2d 363, 366, *cert. denied,* 423 U.S. 828, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975); *Shayne v. Madison Square Garden Corp.,* 491 F.2d 397, 399–401 (2d Cir. 1974); *Graci v. United States,* 472 F.2d 124, 126 (5th Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct.

2752, 37 L.Ed.2d 155 (1973); *Eisen v. Carlisle & Jacquelin (Eisen I),* 370 F.2d 119, 120–21 (2d Cir. 1966), *cert. denied,* 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967). *See also Hartmann v. Scott,* 488 F.2d 1215, 1220 (8th Cir. 1973); *compare, In re Cessna Aircraft Distributorship Antitrust Litigation,* 518 F.2d 213 (8th Cir.), *cert. denied,* 423 U.S. 947, 96 S.Ct. 363, 46 L.Ed.2d 282, *rehearing denied,* 423 U.S. 1039, 96 S.Ct. 577, 46 L.Ed.2d 414 (1975). *Contra, King v. Kansas City Southern Industries,* 479 F.2d 1259, 1260 (7th Cir. 1973); *Hackett v. General Host Co.,* 455 F.2d 618, 621–26 (3d Cir.), *cert. denied,* 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812 (1972).

■ To determine whether a decertification order sounds the "death knell" of the action, we begin by examining the amount of the class representatives' individual claim.[2] Plaintiffs' individual claim for damages totals approximately $2,650. Because this claim falls between those cases where the individual claim is clearly not viable [3] and those cases where the individual claim is viable,[4] we must examine the amount of plaintiffs' claim in relation to their financial resources and the probable cost and complexity of the lawsuit. *See, e. g., Share v. Air Properties G. Inc., supra,* 538 F.2d at 282; *Graci v. United States, supra,* 472 F.2d at 126; *Korn v. Franchard Corp.,* 443 F.2d 1301, 1307 (2d Cir. 1971).

Plaintiffs, both of whom are employed, have an aggregate yearly gross income of $26,000. Their total net worth is approximately $75,000, but only $4,000 of this sum is in cash. The remainder consists of equity in their home and investments.

---

2. Defendants allege that because the record reveals other members of the purported class who have substantial individual claims, the "death knell" doctrine should not apply. That was the result reached in *Share v. Air Properties G. Inc., supra,* 538 F.2d at 283. We do not consider the soundness of that holding, however, because the case is distinguishable on its facts. In *Share* the court referred to class members who were "actively engaged" in the litigation. Here, the record reveals only that certain class members had indicated a willingness to pay part of the expenses of suit, and even that tangential involvement ceased after the appearance of plaintiffs' new counsel.

3. *See, e. g., Ott v. Speedwriting Pub. Co., supra* ($30); *Korn v. Franchard Corp.,* 443 F.2d 1301 (2d Cir. 1971) ($386); *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969) ("less than $1000"); *Eisen v. Carlisle & Jacquelin, supra* ($70).

4. *See, e. g., Shayne v. Madison Square Garden Corp., supra,* ($7,482); *Falk v. Dempsey-Tegeler & Co.,* 472 F.2d 142 (9th Cir. 1972) ($14,125); *Milberg v. Western Pac. R.R.,* 443 F.2d 1301 (2d Cir. 1971) ($8,500).

As of December 1974 plaintiffs had already incurred expenses in excess of $1,200 in connection with this lawsuit. Plaintiffs' new counsel has estimated expenses of this lawsuit to be $15,000. The nature of this case will require extensive discovery, much of which must take place in Florida, where most defendants reside. Moreover, the allegations regarding the prospectus and financial statements will likely require expert testimony at trial.

After considering all the relevant information in the record, we are convinced that plaintiffs have sustained their burden[5] of showing that they will not pursue their individual claim if the decertification order stands. Although plaintiffs' total net worth could absorb the cost of this litigation, "it [takes] no great understanding of the mysteries of high finance to make obvious the futility of spending a thousand dollars to get a thousand dollars—or even less." Douglas, *Protective Committees in Railroad Reorganizations,* 47 Harv.L.Rev. 565, 567 (1934). We conclude we have jurisdiction to hear the appeal.

■ The district court has wide latitude in determining whether an action may be maintained as a class action. If the court applies the proper criteria in making this determination, its decision is reviewable only for an abuse of discretion. *Wright v. Stone Container Corp.,* 524 F.2d 1058, 1061 (8th Cir. 1975); *Shumate v. Nat'l Ass'n of Securities Dealers,* 509 F.2d 147, 155 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97 (1975); *Kamm v. California City Development Co.,* 509 F.2d 205, 210 (9th Cir. 1975); *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 245 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *City of New York v. Int'l Pipe & Ceramics Corp.,* 410 F.2d 295, 298 (2d Cir. 1969).

■ Because the decertification order in this case was predicated solely on the finding that plaintiffs were not adequate class representatives because they had inordinately delayed in prosecuting the litigation,[6] the sole issue[7] on this appeal may be simply stated: was the district court's decertification order finding plaintiffs to be inadequate class representatives so erroneous as to constitute an abuse of discretion? We answer that question in the affirmative, and we reverse.

**5.** Plaintiffs who seek to invoke the "death knell" doctrine have the burden of developing, in the trial court, an adequate factual record upon which an appellate court may determine whether the action will proceed absent class certification. *Share v. Air Properties G. Inc., supra,* 538 F.2d at 282; *Gosa v. Securities Investment Co.,* 449 F.2d 1330 (5th Cir. 1971). As the *Gosa* court indicated, the preferable way to do this is in a post-ruling hearing where the district court has the opportunity to enter appropriate findings of fact. No such hearing was held in the instant case. However, we do not read *Gosa* as requiring such a hearing in all cases. In the instant case, the record of the entire proceeding contains sufficient facts to allow us to make an informed judgment on the matter.

**6.** As plaintiffs correctly point out, the decertification order was phrased in terms of a denial of defendants' rights to a speedy adjudication of claims against them. This factor is not a proper criterion to consider in determining whether plaintiffs will adequately represent the members of the class. However, a review of the entire record convinces us that the district court was concerned with plaintiffs' failure to prosecute the case as it related to their adequacy as class representatives.

**7.** Plaintiffs also seek to raise the following issues: (1) that the decertification order was erroneously predicated on plaintiffs' failure to join underwriters as defendants; (2) that the district court exhibited a lack of fair and impartial judicial procedure; (3) that the district court ordered plaintiffs to follow class action procedures which violate the federal rules; and (4) that the district court violated this court's mandate by not promptly lifting the stay on substantive discovery after certifying the class. The first two claims are devoid of factual support in the record. The third claim is relevant to the decertification order only insofar as it alleges that the class action procedures authorized by the district court impeded the progress of the litigation. As such, it merely restates the allegation that the delay was not caused by plaintiffs. The final claim is moot because the decertification order lifted the stay on substantive discovery. Moreover, as with the third claim, its only relevance to the decertification order is the allegation that the stay of discovery was a contributing cause of the delay.

The decertification order was apparently based upon three distinct periods of delay. The first period of delay was approximately eight months from the date of filing the complaint until the plaintiffs moved to have the action certified as a class action. The record indicates that this period of time was largely devoted to preparing and amending pleadings and engaging in discovery. We note that plaintiffs filed their motion to certify shortly after defendants filed their last responses to plaintiffs' interrogatories. In these circumstances, we find little to support a finding that plaintiffs were dilatory in moving for class action certification. Furthermore, the general rule is that a delay prior to moving for class action certification is not a basis for refusing certification absent some showing of prejudice. *See, e. g., Bernstein v. National Liberty Int'l Corp.,* 407 F.Supp. 709, 714 (E.D.Pa. 1976); *Souza v. Scalone,* 64 F.R.D. 654, 656 (N.D.Cal.1974); *Boring v. Medusa Portland Cement Co.,* 63 F.R.D. 78, 80 (M.D.Pa.), *appeal dismissed without opinion,* 505 F.2d 729 (3d Cir. 1974); *Feder v. Harrington,* 52 F.R.D. 178, 181–82 (S.D.N.Y.1970); *Epstein v. Weiss,* 50 F.R.D. 387, 392 (E.D.La.1970). No showing of prejudice was made here.

The second time period referred to in the decertification order was the 14 month period between the motion for class action certification and the order certifying the class. The district court's decertification order attributed this delay to the appointment of new counsel for plaintiffs. However, it should be noted that new counsel for plaintiffs did not appear until *after* the order certifying the class was entered.

The defendants' only colorable allegation of delay during this second period is that plaintiffs were dilatory in moving for an evidentiary hearing on the class action motion. The record discloses that the district court indicated during oral argument that an evidentiary hearing should be held if the court decided that the issue of individual reliance did not bar maintaining the suit as a class action. This decision was reached on July 16, 1975, and plaintiffs did not seek an evidentiary hearing until September 20, 1975, a period of nine weeks. During this nine-week period plaintiffs were not inactive. They moved to enjoin the destruction of documents and also moved to lift the stay on substantive discovery. We cannot say, and the district court did not find, that pursuing these avenues was a sign of inaction, negligence, or a failure adequately to protect the interests of other class members.

The third period of time mentioned in the decertification order is the period from the district court order allowing discovery of the names and addresses of class members until plaintiffs first sought to discover that information.[8] This period runs from October 23, 1975, to April 20, 1976, when plaintiffs first requested Punta Gorda's counsel to furnish the names and addresses of the initial registered owners of the securities. Defendants contend that because plaintiffs have offered no compelling excuse for failing to request this information more promptly, this delay *ipso facto* justified the district court's finding that plaintiffs are inadequate class representatives. We disagree.

We begin by noting that there has been no showing that plaintiffs' failure to request production of this information at an earlier date has prejudiced the class members. The notices to the class members

---

8. A persuasive argument can be made that this is the only period of delay upon which the decertification order could properly be predicated. Because the first two periods of delay occurred prior to the certification order, defendants could have raised the issue of failure to prosecute at that time, but did not. They may now be foreclosed from raising the issue based on these delays. *Kramer v. Scientific Control Corp.,* 67 F.R.D. 98, 99 (E.D.Pa.1975),

*rev'd in part on other grounds,* 534 F.2d 1085 (3d Cir.), *cert. denied sub nom., Arthur Andersen & Co. v. Kramer,* 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976). *Cf. In re Cessna Aircraft Distributorship Antitrust Litigation,* 518 F.2d 213, 215 (8th Cir.), *cert. denied,* 423 U.S. 947, 96 S.Ct. 363, 46 L.Ed.2d 282, *rehearing denied,* 423 U.S. 1039, 96 S.Ct. 577, 46 L.Ed.2d 414 (1975).

could not have gone out until the final form of notice was approved by the court, which did not occur until April 9, 1976. Eleven days later, plaintiffs' attorney telephoned counsel for Punta Gorda and requested that Punta Gorda furnish the names and addresses of the initial registered owners of the securities in question. In a letter dated August 4, 1975, counsel for Punta Gorda had agreed to furnish this information. However, in response to the telephone call, counsel for Punta Gorda wrote a letter to plaintiffs' counsel refusing to furnish this information.[9] In these circumstances we cannot agree that plaintiffs were dilatory in seeking the names and addresses of potential class members. They had every right to expect that defendants would promptly furnish this information. To hold that plaintiffs are inadequate class representatives because they failed to anticipate defendants' eventual objections to discovery would be tantamount to saying that class representatives must be gifted with prescience. This we decline to do.

That there has been undue delay in this lawsuit is beyond question. From examination of the entire record of this protracted proceeding, however, it becomes quite clear that much of the delay in this case is directly attributable to defendants. For example, defendants have been granted 14 extensions of time, totalling approximately 190 days, in which to file pleadings, motions and other papers. In addition, defendants have filed motions to reconsider or modify earlier court orders, which motions have consistently alleged grounds previously ruled upon by the court. The clear import of this course of conduct is to make this lawsuit as time-consuming and costly as possible.

In addition, the district court has on some occasions taken action which did not advance the progress of this litigation. The court took approximately five months to decide the class action certification motion after the evidentiary hearing was held. The court took approximately four months to approve the form of notice to the class members. These delays appear to have been justifiable due to the complex nature of the questions presented. However, during this time there was a stay of substantive discovery in effect. The practical effect of this stay was to prevent the parties from concurrently proceeding to the merits while the court considered the various procedural questions. In these circumstances, virtually all the plaintiffs could do to advance the course of this litigation was to attempt to lift the stay on discovery. Plaintiffs twice sought to lift this stay and were twice unsuccessful.

We conclude that the district court order decertifying the action as a class action because of plaintiffs' failure to prosecute is wholly unsupported by the record, and we accordingly reverse. We do not disturb that portion of the order which lifted the stay on substantive discovery.

The record in this case compels us to make certain further comments. We are dismayed at the utter lack of cooperation between opposing counsel. The record is replete with instances where relatively minor procedural matters have mushroomed into full-scale confrontations, with the concomitant avalanche of briefs, memoranda, etc. By and large, these matters could, and should, have been settled informally by the parties or, if necessary, in conference with the district court.

Even more disturbing is the tone with which these proceedings have been conducted. All too often the parties have engaged in personal attacks on opposing counsel and the district court. These baseless allegations are not a substitute for advocacy based on the facts and the law and they have no place in our judicial system.

On remand, we anticipate that this conduct will not reoccur. If it does, the district

---

**9.** This refusal was later formalized in objections to plaintiffs' motion to produce. One of the objections to this motion was that the requested information was not in the possession of Punta Gorda, but in the possession of Punta Gorda's transfer agent. Because the transfer agent could only release this information at the direction of Punta Gorda, we find this objection little else than a delaying tactic.

court will be forced to take a more active role in managing this case to insure that it progresses as expeditiously as possible consistent with fairness to the parties. *See Manual for Complex Litigation* § 1.10 (1973).

In No. 76–1881, the order of the district court is reversed and the cause remanded for further proceedings consistent herewith. In No. 76–1906, the petition for writ of mandamus is dismissed.