The **CITY OF NEW YORK**, a Municipal Corporation of the State of New York, on behalf of itself and all others similarly situated, Plaintiff,

v.

**INTERNATIONAL PIPE AND CERAMICS CORPORATION**, Lock Joint Pipe Company, Kerr Concrete Pipe Company, Martin Marietta Corporation, DePasquale Brothers, Inc., 8 Morris Avenue Glen Cove Corp., and Colonial Sand & Stone Co., Inc., Defendants.

Motion Nos. 5 and 6, Docket 32555.

United States Court of Appeals Second Circuit.

Argued June 17, 1968.

Decided April 10, 1969.

**296**

William H. Mathers, New York City (Chadbourne, Parke, Whiteside & Wolff, New York City, for defendant Martin Marietta Corp.), for the motion.

Clark C. Vogel, Rumson, N. J., and Arnold & Porter, Washington, D. C., of counsel.

Sullivan & Cromwell, New York City (for defendants International Pipe & Ceramics Corp. and Lock Joint Pipe Co.), for the motion.

Jerome Doyle, New York City (Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendant Kerr Concrete Pipe Co.), for the motion.

Thomas J. Higgins, Roslyn Heights, N. Y. (for defendants DePasquale Brothers, Inc. and 8 Morris Avenue Glen Cove Corp.), for the motion.

Goodstein, Zamore, Mehlman & Krones, New York City (for defendant

* Chief Judge, District of Connecticut, sitting by designation.

Colonial Sand and Stone Co., Inc.), for the motion.

J. Lee Rankin, Corp. Counsel, New York City, in opposition.

Louis J. Lefkowitz, Atty. Gen., State of New York (for intervenor plaintiff New York State Thruway Authority), in opposition.

Sidney Goldstein, New York City (for intervenor plaintiff The Port of New York Authority), in opposition.

David Berger, Philadelphia, Pa., Maloney, Ross, Phelps & Wolf, New York City (for various intervenor plaintiffs), in opposition.

Dickstein, Shapiro, Dennis & Galligan, New York City (for intervenor plaintiff State of Wisconsin), in opposition.

David Bromberg, New York City (for intervenor plaintiff State of Kansas), in opposition.

Before MOORE and HAYS, Circuit Judges, TIMBERS,* District Judge.

MOORE, Circuit Judge:

The plaintiff "The City of New York, a Municipal Corporation of the State of New York, on behalf of itself and all others similarly situated" brings this action as the representative of a class (Rule 23, F.R.Civ.Pr.) consisting of "all state and municipal governments, government agencies, authorities and subdivisions in the United States * * * " ** The defendants are manufacturers and sellers of "low-pressure" and "non-pressure" concrete pipe, allegedly sold to governmental agencies pursuant to a conspiracy in violation of the antitrust laws of the United States. This action is the outgrowth of two indictments in the District of New Jersey in 1966 in which certain of the defendants in this action and others not here named were charged with criminal conspiracy.

The indictments were filed on January 11, 1966, the defendants therein pleaded *nolo contendere* and sentences were im-

** Amended after Judge Ryan's decision now appealed from to reduce the class to States lying east of the Rocky Mountains except Texas, Louisiana and Mississippi.

posed on April 29, 1966. The action by the City of New York was filed on April 28, 1967. These dates are of importance only with reference to the possible application of the statute of limitations if the requirement for the commencement of this action within a year from the termination of the criminal actions controls (Clayton Act, §§ 4B, 5(b), 15 U.S.C. §§ 15b, 16(b), 69 Stat. 283). In all, twenty-seven governmental agencies have intervened as plaintiffs.

In January 1968 defendant Kerr Concrete Pipe Company made a motion, in which the other defendants joined, to obtain a determination that the action should not be treated as a class action as defined in Rule 23. The motion came on before Judge Ryan. The Judge did not dispose of the motion in summary fashion but made a thorough investigation into the facts bearing upon a determination of the class action issue. Towards this end he directed extensive factual discovery by means of interrogatories and answers thereto. The answers included amongst other things information as to the names of the manufacturers, place of manufacture, the names and location of customer purchasers, the periods of purchase and sale, and the cost.

*The Proceedings Before Judge Ryan*

On December 12, 1967, a hearing was held before Judge Ryan relating largely to the granting of interventions and to the effect of existing interrogatories and answers thereto.

On January 10, 1968, a lengthy hearing was conducted (Tr. pp. 1–97). Further interventions were allowed and various counsel for plaintiff and intervenor-plaintiffs presented their views as to the propriety and practicality of treating the case as a class action. During argument, the Court expressed the opinion that "the Court will be in a much better position to determine whether this is or is not to be declared a class action at this time if we have these interrogatories served and answered before the determination is made to have some basis for it" (Tr. p. 31).

On April 2, 1968, there was an adjourned hearing (Tr. pp. 1–127), on the class action motion and the Court proceeded to hear final argument "since the answers to these interrogatories have been served by the defendants and by a substantial number of the plaintiffs * * *" (Tr. p. 4). The interrogatories and answers were exceedingly voluminous and were filed by the City of New York, International Pipe and Ceramics Corp., Kerr Concrete Pipe Co., the Port of New York Authority, the State of New York and the New York State Thruway Authority, the City of Philadelphia, Allegheny County Sanitary Authority, the City of Detroit, the City of Tampa, the City of Pittsburgh, the State of Alaska and the State of Ohio. Illustrative of the vast quantity of information furnished to the Court are the answers of the State of Ohio for the years 1955–58 which covered 634 pages and the submission by the New York State Thruway Authority of 102 exhibits.

During argument, the Court covered the many factual elements which he felt should control his judgment as to whether this action should be regarded as, and continue as, a class suit.

After having the nature and scope of the prospective trial thus unrolled before him, having had an opportunity to examine the interrogatories and answers thereto over a period of many weeks and after having heard extensive oral argument on the class action issue, Judge Ryan came to the conclusion that "treatment of this suit as a class action would not be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"

Of particular significance is Judge Ryan's role as a Rule 2 judge, namely, as the judge assigned to hear and determine all procedural matters in advance of the trial, to align the relevant issues and to hear and determine the issues on the trial itself. The responsibility therefore of the fairest and most efficient way to handle the trial should be left in the hands of the judge charged therewith.

This point is illustrated by Judge Ryan's comment during argument for the issuance of a certificate that he had "simply held that this suit under the facts here, the undisputed facts, does not require and does not dictate that it be given class treatment" and that "it is not just, fair and equitable and that it would not promote the orderly conduct of this litigation" (Tr. 4/23/68, pp. 18, 15).

The key words of Rule 23 are "fair and efficient adjudication." This issue should not be decided in an abstract or academic manner but rather in a practical and realistic way by a trial judge who has knowledge of the actual problems presented in the courtroom by these multi-plaintiff, multi-defendant cases. In theory and in an initial off-hand reaction, it is tempting to say: why not let everyone who asserts a somewhat related grievance come into a common arena to resolve their controversy? However, on a moment's reflection, it should be apparent that the capacities of judges and jurors to absorb the factual situations thus presented are finite and that court-houses are not coliseums. Illustrative of the desirability of focusing attention upon narrow issues is the increasing tendency in the criminal law to avoid as much as possible the multi-defendant trial on the theory that it is most difficult to assure "equal protection" and "due process" if court or jury has to resolve a plethora of issues between a host of parties.

Contrasted against this obvious difficulty are the equally obvious benefits intended to be bestowed by the Rule 23 class action which would obviate the necessity for many—possibly hundreds of —separate actions where the issues are similar.

■ In resolving these countervailing situations, the judgment of the trial judge should be given the greatest respect and the broadest discretion, particularly if, as here, he has canvassed the factual aspects of the litigation.

Judge Ryan came to the conclusion that the "whole case remains as an inde-pendent suit by all parties who are joined as parties plaintiff * * * the action continues, but it continues not as a class action * * * [and that it] continues as to all named plaintiffs which would include those who have been granted permission to intervene." Thus neither the City of New York nor any of the other twenty-seven intervenor-plaintiffs have been foreclosed or thwarted in any way from having their rights adjudicated through trial to final judgment. No judgment, final or otherwise, has been levied against them by Judge Ryan. He has merely decreed that upon the facts presented, the district court trial would better result in a fair and efficient adjudication were it to proceed not as a class action. Judge's Ryan's order did not contain the necessary statement required by 28 U.S.C. § 1292(b). A motion to add such a statement was denied.

■ The sole question now before this court is whether Judge Ryan's order is a "final decision" as defined in 28 U.S.C. § 1291 and, hence, appealable at this stage of the litigation. Since the order and the opinion on which it is based are premised on the assumption that the action will proceed to some ultimate final judgment with twenty-eight plaintiffs against all named defendants, it should be quite obvious that the order is not a final judgment in the action.

Plaintiffs, however, would avoid this conclusion by arguing that, if the action is not given "class action" status, the rights of unknown or unnamed entities presently not parties may be adversely affected and that the application of various statutes of limitations may be dependent upon such status.

The intervenor-plaintiffs claim that "the statute is no bar because they have filed suit within the four-year period of limitations, * * *; [that]" the "time period has not passed under the theory that the defendants have fraudulently concealed the conspiracy"; and that if they "should be unsuccessful because of the statute of limitations defense available to the defendants, presumably they could question the class

action determination on appeal" (Mem. City of New York, pp. 11–12). The effect of statutes of limitations on the rights of the various parties will depend upon the facts and the law relating thereto as may be developed upon the trial. The many suppositious situations advanced by the City, if they arise, can and should be a part of any appeal which results after final judgment when an appellate court can review the decision upon both law and facts. In short, the City and intervenor-plaintiffs will have full opportunity to urge their respective positions on appeal from a final judgment.

Consideration must now be given to the decisions, which, the City and intervenor-plaintiffs urge, compel the conclusion that Judge Ryan's order is appealable.

This Court held in Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (1966), that finality existed because the action could proceed only if it were a class action and that the order if unreviewed would have been "for all practical purposes— the death knell of the action" (p. 121). Here no such situation exists. The City and twenty-seven plaintiff-intervenors with adequate resources to continue the action and with substantial amounts at stake will undoubtedly carry on.

In the much-cited Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the "death knell" tolls even more loudly because no future appeal could rectify plaintiffs' failure to provide security for costs and expenses. The claim of right there asserted was quite "collateral to, rights asserted in the action."

However, in All American Airways v. Elderd, 209 F.2d 247 (2 Cir., 1954), the district court ordered an amendment to the answer "by the elimination of all allegations of a class suit" (p. 248). Such an order was held by this Court to be "a matter for his [the trial judge's] discretion if the process does not overlong delay the actual trial" (p. 249). On appeal this Court said: "In any event the non-appealability of the order in this type of class action is apparent" (p. 249). More recently in Lipsett v. United States, 359 F.2d 956 (2d Cir. 1966), on an appeal from an order "striking allegations in the pleadings designating the action as one brought on behalf of a class," and denying intervention, this Court (Smith, Hays, C.JJ., and Clarie, D.J.) said: "The order striking the allegation of a class action is certainly not appealable." * * * "There was here a proper exercise of discretion, and since the ruling is only appealable if at all in case of abuse of discretion, the appeal must be dismissed" (p. 960).

The several cases cited by the Attorney General of the State of New York and the Port of New York Authority relate largely to the denial of intervention. But here intervention was granted by Judge Ryan to twenty-six intervenors before his order and to one thereafter.

Nor is there any likelihood that a no-other-litigation situation will be presented because Judge Ryan has found that some 66 other actions are pending.

The City urges that the order is appealable under 28 U.S.C. § 1292(a) (1) relating to appeals from interlocutory orders with respect to injunctions. There is no basis for the City's supposition that the order "may effectively preclude the granting of such [injunctive] relief" (City's Mem. p. 16). Judge Ryan neither issued nor denied any injunction; no such question was before him. The cases cited by the City dealing with injunctive relief sought by school children to prevent discrimination on the ground of race have no application here. Furthermore, Judge Ryan did not exclude present intervenors nor deny intervention by others.

The 1966 amendment to Rule 23 did not so much alter the theories or prerequisites to a class action as to make them more specific. The amendment related largely to the various procedural steps and orders after a determination that the action should proceed as a class action. See Rule 23(c) (1) (2) (3) (4), (d) and (e).

Paragraph (a) "Prerequisites to a Class Action" clearly justifies Judge Ryan's decision. Thus, one or more members of a class may sue on behalf of all "only if" (1) the class is so numerous that joinder is "impracticable"—Judge Ryan did not so find, rather he found to the contrary; (3) the claims or defenses are "typical," and (4) the representative parties will adequately and fairly protect the interests of the class.

During the lengthy argument on April 2, 1968, Judge Ryan, when counsel warned against his "making a premature determination that there is not a class action at an incipient stage," replied, "I think this is not an incipient stage in this litigation. You've already had extensive discovery and we've had specific interrogatories directed to this very question [class action]" (Tr. 4/2/68, p. 120). Throughout his opinions expressed during argument, Judge Ryan made it clear that he found from the proof before him that the prerequisites of a class action had not been met and summarized the lack of finality in saying, "I am not dismissing it [the complaint] as to any of these defendants. I am not dismissing it at this point as to any of these intervenors. The suit continues, and all I determine is whether or not there should be notice for solicitation of other parties to join the suit or whether or not this is a class action" (Tr. pp. 112, 113). His views that the action should best proceed not as a class action were condensed in his Memorandum Endorsement. In so deciding, it would seem that he was acting within the very discretionary area which new Rule 23 gives to the trial judge.

The decisions[1] themselves demonstrate the breadth of this discretion.

The particular trial judges charged with the responsibility of the trial and with their eyes on its manageability should exercise their discretion in the light of the particular facts presented.

In final analysis, resolution of the question now presented reverts to the "fair and efficient adjudication" problem. The trial judge will have to face this problem in a realistic way. He should be afforded the greatest latitude in the exercise of his judgment after a careful factual exploration as to how this result can be attained. Furthermore this opportunity will be given to him as the case develops because Rule 23(c)(1) specifically provides that the order "may be altered or amended before the decision on the merits."

Since the order and the facts upon which it is based do not come within sections 1291 or 1292(a)(1) nor within any established exceptions thereto, the order must be held to be non-appealable. *Eisen, supra,* and *Cohen, supra,* are not to the contrary. Under Judge Ryan's ruling, all parties will have their day in court and any errors which may occur can be reviewed upon an appeal from the final judgment.

HAYS, Circuit Judge (dissenting):

I would deny the motion to dismiss the appeal from the order determining that the action is not maintainable as a class action. Although it is true that the order is not the last order possibly to be made in the case, it should be considered final within the meaning of 28 U.S.C. § 1291 (1964) for purposes of allowing an appeal.

Certain members of the proposed class have claims that are not large enough to warrant their undertaking the expense of

1. Kronenberg v. Hotel Governor Clinton Inc., D.C., 41 F.R.D. 42 (1966) (Motion to dismiss complaint for failure to state a claim cognizable as a class action denied); Fischer v. Kletz, D.C., 41 F.R.D. 377 (1966) (class action); Berger v. Purolator Products, Inc., D.C., 41 F.R.D. 542 (1966) (despite fact that actions were brought under complaints alleging that they were class actions, court held that they failed to meet requirements of Rule 23(b)); State of Iowa v. Union Asphalt & Roadoils, Inc., 281 F.Supp. 391 (U.S. D.C., S.D.Iowa, 1968) (antitrust case; class action superior); State of Minnesota v. United States Steel Corp., D.C., 44 F.R.D. 559 (class action superior).

separate lawsuits. For those members the order determining that the action is not maintainable as a class action has terminated the litigation. Under such circumstances I consider our decision in Eisen v. Carlisle & Jacquelin (Eisen I), 370 F.2d 119 (2d Cir. 1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967), to be controlling. It is true that *Eisen I* is factually distinguishable, for the City of New York undoubtedly will prosecute the action in its individual capacity whereas Eisen would not have. However, as to those members of the class for which the action has been terminated the order below is precisely the "death knell of the action" that the *Eisen I* holding of appealability was designed to prevent. See also Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968).

Moreover if the appeal is dismissed not only may certain claims never be adjudicated but there may never be another opportunity for appellate review of the class action determination. The City of New York is appealing now as the representative of the class. With the dismissal of the class action its duty to represent the class will cease. Should the City be successful in prosecuting its claim it will have no reason to take an appeal from the adverse class action determination. The intervening plaintiffs will similarly have no occasion to appeal from the class action determination should they prevail against the asserted defense of the statute of limitations. It is only if their claims are held to be barred by the statute of limitations that they will find it necessary to fall back on the class action theory.

Since I believe that the class action determination is appealable I turn briefly to the merits of the district court's order. It is to be noted that the remarks of the majority on this issue are dicta only and will not be controlling should the case be appealed after trial.

In our second decision in Eisen v. Carlisle & Jacquelin (Eisen II), 391 F.2d 555, 563 (2d Cir. 1968), we held, citing Escott v. Barchris Constr. Corp., 340 F. 2d 731 (2d Cir. 1965), cert. denied sub nom. Drexel & Co. v. Hall, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1966), that new Rule 23 "should be given a liberal rather than a restrictive interpretation * * *." Accord, Green v. Wolf Corp., *supra*. The district court has given the rule a restrictive interpretation.

The suit satisfies, as it must to be brought as a class action, all the conditions of Rule 23(a) and the conditions of at least one of the three subdivisions of Rule 23(b).

It is obvious that the class on behalf of which the action is brought is so numerous as to make joinder impracticable (Rule 23(a) (1)). The allegations of conspiracy involving at least two defendants provide questions of law and fact common to the class (Rule 23(a) (2)). It is alleged that all members of the class, i. e. the purchasers of concrete pipe, have sustained damage as a result of the conspiracy; thus it appears that the claims of the representative parties are typical of the claims of the class (Rule 23(a) (3)). The common issue of conspiracy predominates over questions affecting only individual members (Rule 23(b) (3)).

Excessive deference to the district court has led the majority to disregard the provisions and the intent of Rule 23 and the authority of the *Eisen* cases. The possible difficulties of administration of the suit as a class action are far outweighed by the advantages of allowing vindication of a large number of claims which would not otherwise be vindicable.

The order dismissing the suit as a class action should be reversed.