Dolores DONINGER et al., Appellants,

v.

PACIFIC NORTHWEST BELL, INC., Appellee.

Nos. 76–1460 and 76–1461.

United States Court of Appeals, Ninth Circuit.

Nov. 25, 1977.

Edward Heavey (argued), Heavey & Woody, Seattle, Wash., for appellants.

Mary Ellen Krug (argued), Kenneth E. Rekow, Marianne Holifield, Seattle, Wash., for appellee.

Before KOELSCH and ELY, Circuit Judges, and VAN PELT,[*] District Judge.

ELY, Circuit Judge:

These consolidated appeals are from Orders of the District Court, denying appellants' motions for class certification under Fed.R.Civ.P. 23.[1] The complaint was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Equal Pay Act, 29 U.S.C. § 206(d). It alleged that the appellee, Pacific Northwest Bell (PNB), had engaged in illegal sex discrimination practices. The appellants, plaintiffs below, are 31 female employees of PNB. They seek, according to the complaint, to represent the class of "female persons who are now employed or were employed, or who might have become employed by the corporation at its plants or offices, and who have been, continue to be; or might be adversely affected by the practices complained of herein." The complaint thereafter alleges violations of Title VII and the Equal Pay Act by PNB in "job assignments in facilities assigning, frame assembly, and test desk. . . ." The appellants sought broad injunctive relief and backpay awards as remedies to compensate for, and to halt, the alleged discriminatory practices.

PNB answered the complaint by denying the allegations of sex discrimination and by asserting that a consent decree entered in *EEOC, et al. v. American Telephone & Telegraph (AT&T), et al.,* Civil Cause No. 73–149, reported at 1 Emp.Prac.Guide [CCH] ¶ 1860, at 1533–3 to 1533–14 (1973), prevented the present suit from being processed as a class action. This consent decree, entered by the United States District Court for the Eastern District of Pennsylvania, settled controversies between the United States and AT&T and all of its 22 operating companies arising from alleged violations of the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, and the Equal Employment Opportunity Act. PNB was a party to the action and to the consent decree. The decree provided for back payments of approximately $15 million. Additionally, the decree directed implementation of affirmative action programs to prevent discrimination in employment, including setting goals and timetables for the programs covering transfers, promotions, lay-

---

[*] Honorable Robert Van Pelt, United States District Judge for the District of Nebraska, sitting by designation.

1. Rule 23 provides in parts pertinent to this appeal:

Rule 23. Class Actions

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

offs, recalls, employee information, testing, promotion pay, hiring of female college graduates directly into management, and pay rate adjustments.

The consent decree provided specifically for individual employees to avail themselves of the third-party relief offered under the decree. The decree also described the effect of such voluntary acceptance of the third-party relief. Part B(II)(B) of the decree, entitled "Effect of Decree," provides:

> B. Acceptance by any person of individual relief ordered in PART A. Section VIII of this Decree shall constitute a waiver and release by such person of any claims for alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981, 1983, Executive Order 11246, as amended, or any applicable state fair employment practice laws or regulations based upon occurrences prior to the date of this Decree.

Individual employees taking advantage of the monetary relief offered under the decree were required by PNB to sign waiver forms that were parts of the drafts made payable to the employees. The waiver and release clause stated:

> By endorsement the payee waives, releases, and covenants not to sue any Bell company with respect to any claims for violations of any federal or state fair employment practice law or regulation based on occurrences prior to January 18, 1973.

The pay drafts were accompanied by explanatory material advising the employees of their rights under the consent decree.

It was PNB's contention in the District Court that the consent decree negated the possibility of class treatment in the case now before us on the grounds that substantial numbers of the class that appellants seek to represent already had accepted the benefits available under the consent decree and had waived their right to bring suit for violations covered by the release. Therefore, PNB argued, class treatment was inappropriate because many in the putative class would be precluded from seeking certain of the remedies sought by appellants.

PNB does not, nor could it properly, dispute the right of individual employees who had not voluntarily accepted relief under the decree to bring suit for alleged sex discrimination, whether or not the alleged violations were covered by the consent decree. Even though third-party relief was made available by the decree, since no employee was a party to the AT&T litigation or the consent decree, employees remained free, absent waiver, to reject the relief offered under the decree and seek individual relief through private litigation. *See United States v. Allegheny-Ludlam Indus., Inc.,* 517 F.2d 826, 836–37, 840 (5th Cir. 1975), *cert. denied sub nom., Harris et al. v. Allegheny-Ludlam Industries, Inc.,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *Reed v. Arlington Hotel Co., Inc.,* 476 F.2d 721, 724 (8th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973).

Approximately two months after the filing of the complaint, appellants submitted a set of 16 interrogatories to PNB. These interrogatories sought to probe the extent of PNB's computer capabilities in respect to personnel information. This attempted discovery was an obvious prelude to further discovery by the appellants of PNB's employment structure. PNB objected to the interrogatories, primarily on the ground that the only information that could be gained from the interrogatories pertained solely to the class action issue and that a class action was not appropriate because of the consent decree. The interrogatories and objections were filed with the District Court on June 9, 1975. On October 1, 1975, almost four months later, appellants submitted a motion to compel answers. The District Court denied the motion as being untimely and instructed the appellants first to move for class certification, reasoning that the interrogatories could become appropriate only after class certification, if at all. Subsequently, on November 3, 1975, the appellants moved for certification of a class. A hearing on the appellants' motion was conducted on December 12, 1975. Thereafter, on December 22, 1975, the District Court entered an Order denying the

motion for class certification on the ground that appellants had not made an adequate showing that the requirements of Rule 23(a) had been met. On January 5, 1976, appellants moved that District Court to reconsider its Order, or, in the alternative, amend the Order to permit appellants to renew their motion for class certification after further discovery aimed at establishing the required elements of section (a) of Rule 23. On January 20, 1976, the District Court entered an Order denying appellants' motion on two grounds. First, the court held that discovery measures were "not likely to produce the information necessary to demonstrate that a class action is appropriate. . . ." Second, the court found that in light of the consent decree, class action treatment would not be superior to other available methods of handling the litigation. This appeal from the two Orders of the District Court denying class certification was then taken. We affirm.

## JURISDICTION

██ At the outset, we note the jurisdictional basis for the appeal. Although class certification orders under Rule 23 are interlocutory in nature, such orders may be appealed, in certain circumstances, prior to the entry of a final judgment in the action in which the orders are made. If denial of class certification forecloses the broad injunctive relief sought on behalf of the putative class, jurisdiction in this court is proper under 28 U.S.C. § 1292(a)(1).[2] *Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330, 1331–32 (9th Cir. 1977); *Price v. Lucky Stores, Inc.*, 501 F.2d 1177 (9th Cir. 1974); *Spangler v. United States*, 415 F.2d 1242 (9th Cir. 1969). Since broad injunctive relief was here sought by the appellants, denial of class certification had the effect of narrowing and foreclosing that relief; consequently, we have jurisdiction to review the challenged Orders.

2. § 1292. Interlocutory decisions
  (a) The courts of appeals shall have jurisdiction of appeals from:
  (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court

## ISSUES

Appellants raise four principal contentions. First, they claim that the District Court erred in denying class certification on the ground that the requirements of section (a) of Rule 23 had not been met. Second, they argue that it was error for the District Court to deny their motion for class certification without allowing discovery. Third, they contend that the District Court improperly refused to consider certifying the class under section (b)(2) of Rule 23. Fourth, appellants assert that the District Court erroneously determined that a class action would not be a superior method of handling the lawsuit.

## I

██ As above stated, the first contention of the appellants is that the District Court committed reversible error when it denied class certification on the ground that the requirements of Rule 23, section (a), had not been met. Section (a) of Rule 23 provides:

  (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The burden of demonstrating that the elements of section (a) are satisfied is on the party seeking to have a class certified. *Albertson's, Inc. v. Amalgamated Sugar, Inc.*, 503 F.2d 459, 463 (10th Cir. 1974); *Gillibeau*

of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court . ..

*v. Richmond,* 417 F.2d 426, 432 (9th Cir. 1969); *De Marco v. Edens,* 390 F.2d 836, 845 (2d Cir. 1968). "[T]here must not only be allegations relative to the matters mentioned in Rule 23 . . . but, in addition, there must be a statement of basic facts. *Mere repetition of the language of the Rule is inadequate." Gillibeau v. Richmond,* 417 F.2d 426, 432 (9th Cir. 1969) (emphasis added). In assessing the correctness of the trial court's determination whether to certify, we are obligated to defer to the District Court's decision absent a showing that the court abused its discretion.

A class action determination under Fed.R.Civ.P. 23 is one of a trial court's considered discretion. As was stated in *City of New York v. International Pipe & Ceramics Corp.,* 410 F.2d 295, 298 (2d Cir. 1969), "the judgment of the trial court should be given the greatest respect and the broadest discretion, particularly if . . . he has canvassed the factual aspects of the litigation." This is so because the district court is in the best position to consider the most fair and efficient procedure for conducting any given litigation. Such a determination by the court will not be disturbed on appeal unless the party challenging it can show an abuse of discretion. *Price v. Lucky Stores, Inc.,* 501 F.2d 1177, 1179 (9th Cir. 1974) (citations omitted).

We now turn to the particulars of this appeal. After fully reviewing all of the facts that were before the trial court, we cannot find that there was any abuse of discretion whatsoever. The appellants' complaint merely mimics the language of Rule 23 in a parallel fashion. Moreover, only two affidavits were submitted by the appellants, and both were of their trial counsel. The contents of those affidavits added little, if any, factual support to the class action allegations. Counsel for the appellants forthrightly and frankly admitted that neither he nor any of his clients "could . . . submit affidavits based upon personal knowledge, outlining specific facts to support the allegations made with regard to the elements necessary for a class." The memoranda of authority in support of appellants' motions are likewise lacking in articulable facts, offering only vague and conclusory statements with little specific content. In sum, the trial court had before it only the most meager support for appellants' class action allegations. On the other hand, PNB had come forward with substantial uncontroverted information tending to show the inappropriateness of class treatment. We examine that information as it bears on each requirement of Rule 23(a).

**A**

In respect to the numerosity requirement of section (a) of Rule 23, PNB submitted the affidavit of its General Personnel Supervisor. That affidavit disclosed that substantial numbers of PNB female employees had accepted individual monetary relief under the consent decree. For example, in June of 1973, backpay drafts were disbursed to 246 eligible female employees of PNB. Only thirteen active employees, including ten of the appellants, have refused to accept these particular backpay adjustments. Additionally, approximately 4,000 females and employees of minority groups have received one-time lump sum promotion delay payments authorized under the consent decree. All of these backpay and lump sum payments were paid by special draft to the employees, each draft bearing the waiver form previously described. It is apparent that the waivers are binding legally, at least as to suits for monetary relief stemming from claims grounded on alleged discriminatory actions or practices occurring prior to January 18, 1973. In a closely analogous situation involving a similar consent decree, the Fifth Circuit analyzed the effect of such a waiver on future litigation:

Reduced to their simplest terms, the items to be released by electing employees pursuant to paragraph 18(g), in return for back pay, are: (1) *all claims . . .* asserting unlawful employment discrimination by the defendants and/or their agents or privies insofar as such claims are based on acts or practices, within the

scope of the government's complaint or the consent decrees, which were completed on or before the date of the decree's entry; and (2) claims for *damages* incurred *at any time* because of the continued effects of complaint or decree covered acts or practices which took place on or before the entry date of the consent decrees.

*United States v. Allegheny-Ludlam Industries, Inc.,* 517 F.2d 826, 853 (5th Cir. 1975), *cert. denied sub nom., Harris et al. v. Allegheny-Ludlam Industries, Inc.,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

There, the court also indicated that certain types of claims were not within the scope of the waiver. First, the release was held not to bar "an employee from suing in the future for additional injunctive relief if the reforms contemplated by the decrees do not eliminate continued effects which are causally grounded in past acts of discrimination." *Id.* The court was careful to note, however, that these claims were not included only because they did not seem to be contemplated by the waiver and release paragraph itself. The parties to the consent decrees have apparently modified the provision to include such claims.[3] Second, an employee waiver and release was found not to "preclude a suit for *any* form of appropriate relief for *subsequent* injuries caused by *future* acts or undertakings the effects of which are equivalent to the otherwise compromised, noncompensable effects of past discriminations covered by the complaint or the decrees." *Id.* at 854. These are essentially prospective rights that cannot, as a matter of public policy, be waived in advance.

The similarity of the consent decrees in *Allegheny-Ludlam* to the consent decree involved in our case was observed by the *Allegheny-Ludlam* court, which noted that "it seems that both releases could be thought to mean the same thing, *i. e.,* a bar to additional relief of any kind for continuing effects of past discriminations." *Id.* at 852 n. 30. Although we find it likely that the consent decree's release and waiver pro-

visions bear the meaning attributed by the *Allegheny-Ludlam* court, we need not decide the precise meaning and scope to be ascribed to the waiver and release provisions of the consent decree in question here. That issue is not directly before us and is most appropriately left, in the first instance, for resolution by the District Court. It is sufficient to note that the release and waiver provisions clearly anticipated the compromise of all claims for monetary relief, whenever arising, because of the effects or continued effects of discrimination that occurred on or before January 18, 1973. We need not decide here what effect the waiver and release provisions may have on injunctive or prospective relief sought in private litigation. From the plain language of the complaint here, the language describing the class sought to be represented and the relief prayed for, it is apparent that extensive employee acceptance of relief under the former decree would both reduce and fragment the putative class that the appellants sought to represent. Backpay is not an insubstantial segment of the relief sought by the appellants in this case. Therefore, any employee who signed a release and waiver would be precluded from participating in, at a minimum, a substantial part of the backpay relief sought by appellants. Since the reduction in possible members of the class would be extensive, it seems obvious that joinder would not be so impracticable that class treatment should be allowed.

Other information presented to the District Court in PNB's affidavit also indicates that joinder might not be impracticable. That information reveals that PNB is divided into six geographical areas, called establishments, for the purpose of implementing the terms of the consent decree. Each establishment has a separate affirmative action program patterned in large part upon a general corporate affirmative action program. All of the named plaintiffs are employed in one of three establishments, Seattle, Northern, or Southern. All of these establishments apparently are located with-

---

3. *See United States v. Allegheny-Ludlam Indus., Inc.,* 546 F.2d 1249, 1251 (5th Cir. 1977).

in the state of Washington. Since different affirmative action programs, and thus possibly different patterns and practices, exist in each establishment, appellants would have considerable difficulty in adequately representing class members from the other three[4] PNB establishments. This is because of the differences in claims and the differences in questions of fact and law under sections (a)(2) & (3) of Rule 23. Consequently, joinder of all those individuals otherwise eligible for a class which appellants could properly represent should not be overly difficult, given their geographical grouping and reduced numbers.

**B**

As noted above, the geographical dispersion of the appellants' employment among three of PNB's establishments creates difficulties with respect to Rule 23's requirement that there be questions of law or fact common to the members of the class. The existence of six separate affirmative action programs with decentralized enforcement leads to the inference, damaging to the appellants, that different questions of fact or law would be involved under the practices prescribed by each establishment's plan and its particular method of implementation. While this analysis, although grounded in fact, is somewhat speculative because no evidence had been received about differences in the various PNB establishment plans, the burden was upon the appellants to demonstrate the existence of the required elements of Rule 23.

In order to determine whether there are questions of law or fact common to the class which plaintiff seeks to represent, normally the [District] Court would look at the complaint to make that determination. Here . . . the complaint is couched in such broad, sweeping terms that it would be utterly impossible to determine whether there are questions of law or fact common . . . [to the class]. Certainly there are no allegations

in the complaint specifying questions of law or fact claimed to be common to the class.

\* \* \* \* \* \*

Such omnibus assertions . . . are wholly insufficient to satisfy the prerequisite of Rule 23(a)(2) that there be questions of law or fact common to the class. *Hyatt v. United Aircraft Corp.*, 50 F.R.D. 242, 246–47 (D.Conn.1970).

The information supplied by PNB on this issue, as well as with respect to the other elements of Rule 23, serves to supplement and reinforce the District Court's judgment that the appellants had failed adequately to demonstrate that all the requirements of section (a) of Rule 23 had been met.

**C**

In addition to the possible differences in claims due to the dispersal of the members of the putative class over different PNB establishments, the PNB affidavit, supporting papers, and exhibits show that the claims and defenses of the appellants, as class representatives, are not representative of the class. It appears that four of the named appellants have accepted the monetary relief offered under the consent decree and have executed the release and waiver forms printed on the pay drafts. Moreover, it appears that six of the appellants never filed charges with the EEOC and do not have "right to sue" letters. These appellants would have different claims and defenses than many of the individuals eligible for the class they seek to represent.

**D**

Although the appellee argues that appellants and their trial counsel have demonstrated through their handling of the litigation that the appellants cannot fairly and adequately represent the class, we find no merit in the argument. While the appellants' conduct of the litigation may not have been impeccable at all points, there is

4. The other three PNB establishments are the Eastern in the Washington-Idaho area and the Portland and Outstate located in Oregon.

certainly nothing to suggest that appellants lack the zeal or their attorneys the competence properly and adequately to prosecute the case. Furthermore, in view of the previously described deficiencies under section (a) we find it unnecessary, if not inappropriate, to analyze this point exhaustively.

After considering all of the information available to the trial court at the time the class certification motion was made, we are persuaded that the Order denying class certification on the ground that the appellants had failed to meet their burden of demonstrating compliance with Rule 23(a) prerequisites was justifiable and well within the bounds of the trial court's discretion. While the District Court had no more here than conclusory allegations from the appellants, it had been supplied with substantial and specific facts from PNB. From these facts, the court was entitled to draw reasonable inferences, all of which tended to show the impropriety of a class action. The dearth of information with which appellants attempted to meet their burden may provide some color to their argument that they should have been allowed more discovery to unearth supporting facts before denial of class certification, but that same inability to bring forward articulable, specific factual contentions ultimately must prove fatal to their attack on the District Court's first Order. Yet appellants nonetheless contend that the trial court's decision was erroneous for two other reasons. First, they argue that Rule 23 should be applied liberally in Title VII cases and that such liberal interpretation requires that the District Court's Order be vacated. We are not unmindful that Title VII's broad remedial purposes are to be considered carefully in order to avoid unduly restrictive applications of Rule 23. *See Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1977). A liberal interpretation of Rule 23 standing alone, however, is no substitute for at least a minimal showing of facts supporting the class action allegations. Mere invocation of the language of Rule 23 in Title VII suits is no mystical legal talisman guaranteeing class treatment. Second, appellants urge

that because class actions are favored in Title VII suits, their suit should proceed as a class action until reasons to warrant contrary treatment preponderate and rebut the presumption. This contention is not in accord with established doctrine. Although most Title VII suits may satisfy Rule 23 requirements, there is no reason to allow class treatment if the prerequisites are not met. The Supreme Court has itself stated that the mere fact that an action is founded on Title VII does not guarantee class treatment.

> We are not unaware that suits alleging racial or ethnic discrimination are by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present. But careful attention to the requirements of Fed.Rule Civ.Pro. 23 remains nonetheless indispensable.

*East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977).

For all of the foregoing reasons we hold that the appellants' first contention is without merit.

## II

Appellants' next argument is that it was error to deny class certification without allowing the appellants an opportunity to conduct discovery. Discovery, they claim, would have provided them with the specific facts they needed to establish the class and meet the requirements of Rule 23. It is clear that under some circumstances the failure to grant discovery before denying class treatment is reversible error. For example, in *Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975), our court wrote:

> Whether or not discovery will be permitted in a case of this nature lies within the sound discretion of the trial court. *See Berland v. Mack*, 48 F.R.D. 121, 126 (S.D.N.Y.1969). Rule 23(c)(1) provides that "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by

order whether it is to be so maintained." In determining whether to grant discovery the court must consider its need, the time required, and the probability of discovery resolving any factual issue necessary for the determination. The propriety of a class action cannot be determined in some cases without discovery, as for example, where discovery is necessary to determine the existence of a class or set of subclasses. To deny discovery in a case of that nature would be an abuse of discretion. Where the necessary factual issues may be resolved without discovery, it is not required. (footnotes omitted).

It is true that the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant. *Yaffee v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972); *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974); *Huff v. N.D. Cass Co. of Alabama*, 485 F.2d 710 (5th Cir. 1973). Yet where the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites, as we find here, the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations. *Hatfield v. Williams*, 64 F.R.D. 71, 75 (N.D.Iowa 1974). This, the appellants in this case did not, and could not, do. They were content to rest solely upon the submission of interrogatories, admitting that they made no attempt to obtain depositions from knowledgeable PNB authorities located nearby and readily available. We are therefore driven, by the particular and unique facts of this case, to hold that it was not an abuse of the trial court's wide discretion to deny discovery before ruling on the motions for class certification. The *Kamm* decision counsels that the need for discovery, the time required, and the probability of discovery providing necessary factual information are all factors bearing on the correctness of the trial court's exercise of its discretion. The precise and extensive factual affidavit submitted by PNB's personnel supervisor, not controverted, was persuasive evidence that a substantial number of PNB employees had already voluntarily accepted relief under the consent decree and were thus disabled from participating in a substantial portion of the Title VII suit and relief thereunder. This fact, as well as those previously mentioned, indicates that regardless of the discovery that might have been undertaken, the numerosity and impracticable joinder requirements of section (a) of Rule 23 could never be met. Moreover, because the class which the appellants sought to represent would have been fragmented according to acceptance of third-party relief under the consent decree and participation in different affirmative action programs in different PNB establishments, the trial court could justifiably conclude that even if the preliminary prerequisites of section (a) were met, there was no reasonable possibility that any of the section (b) hurdles could be overcome.

### III

■ Appellants' third contention is that the District Court erred in not considering their claim that this action was suitable for class treatment under Rule 23(b)(2). Under section (b)(2) of Rule 23, actions may be certified as class suits if final injunctive relief is appropriate to the class as a whole. We pass extended discussion of this contention and simply note that the argument must fail for three reasons. First, Rule 23 is written in conjunctive language. The requirements of section (a) must be met *before* an action is eligible to qualify for consideration under any of the provisions of section (b). Since we have already held that the District Court's ruling that appellants had not met their burden under Rule 23(a) was not erroneous and that it was likewise proper for the District Court to deny the only type of discovery attempted, the appellants cannot complain that their section (b)(2) claims were ignored. The short answer is that the action was not

eligible for section (b)(2) consideration until the requirements of section (a) were met. Second, the PNB affidavit, which, as we have previously emphasized, was uncontroverted by the appellants, shows, as previously described, that any ultimate injunctive relief would very likely have required separate fashioning for the various individuals in the putative class. Third, the action seeks as a major portion of the claimed relief, monetary restitution. To the extent that such relief predominates over the injunctive relief, section (b)(2) of Rule 23 is inappropriate. *Advisory Comm. Notes to Rule 23* (1966).

## IV

■ The appellants' final argument is that the District Court erroneously determined that a class action was not a superior method of conducting the litigation. Rule 23(b)(3) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

   \*    \*    \*    \*    \*    \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The District Court's ruling on this issue was seemingly gratuitous. The District Court had already determined, and continued to hold, that the appellants had failed to meet the requirements of section (a),

thereby making it unnecessary to pass on any contentions under section (b). Additionally, the trial court's determination on the merits, even if unnecessary, seems plainly justifiable and within reasonable bounds of the court's discretion. As we described earlier, there may be numbers of factual or legal issues peculiar to individual members or groups of members of the proposed class. In such a situation, a class action is not warranted under section (b)(3). *Lidie v. State of California,* 478 F.2d 552, 555 (9th Cir. 1973). More importantly, the existence of the consent decree here militates strongly against (b)(3) treatment, since Rule 23 itself indicates that prior litigation is a pertinent factor to be considered. Notwithstanding appellants' protestations, the AT&T litigation which produced the consent decree and the litigation before us now are similar in scope. Prior similar litigation is often the critical factor in denying (b)(3) certification. *See, e. g., Kamm v. California City Development Co.,* 509 F.2d 205 (9th Cir. 1975); *Utah v. American Pipe & Construction Co.,* 49 F.R.D. 17 (C.D.Cal.1969). As we have already discussed, the effect of the consent decree would be drastically to reduce and fragment the potential class. Those difficulties, compounding the inappropriateness of a class action treatment in this case, clearly justified the District Court's determination and produced a decision within the perimeters of the trial court's discretion.

The challenged Orders of the District Court must be, and they hereby are,

AFFIRMED.