617 F.2d 871
 22 Fair Empl.Prac.Cas. 727,
22 Empl. Prac. Dec. P 30,682, 199 U.S.App.D.C. 289
 Robert L. BOSTICK, Individually and on behalf of all others
similarly situated, Appellants,
v.
Daniel J. BOORSTIN, Individually and as Librarian of the
Library of Congress.
 No. 78-2194.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 10, 1979.
Decided Feb. 22, 1980.
Rehearing Denied March 24, 1980.
 
 1
 Appeal from the United States District Court for the District of Columbia (D.C. Civil Action No. 1633-72).
 
 
 2
 Katherine Gruenheck, Atty., Dept. of Justice, Washington, D. C., for appellee; Barbara Allen Babcock, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, Robert E. Kopp and Mark N. Mutterperl, Attys., Dept. of Justice, Washington, D. C., were on the brief.
 
 
 3
 Michael D. Hausfeld, Washington, D. C., with whom Jerry S. Cohen and Herbert E. Milstein, Washington, D. C., were on the brief, for appellants.
 
 
 4
 Before TAMM and MIKVA, Circuit Judges, and HAROLD H. GREENE,* United States District Judge for the District of Columbia.
 
 
 5
 Opinion for the court filed by District Judge HAROLD H. GREENE.
 
 HAROLD H. GREENE, District Judge:
 
 6
 This is an appeal from a judgment in favor of the government in a discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. The principal issue is whether the evidence supports the finding of the court below that the failure of the Library of Congress to promote appellant was not the product of racial discrimination.[1]
 
 
 7
 Appellant is a visual information specialist at the Library of Congress whose pay grade is GS-13. He contends that his position should have been reclassified to a grade GS-15 and that failure of appellee and his subordinates to effect such reclassification was racially motivated.
 
 
 8
 Appellant began working at the Library of Congress in 1947 as a graphic information specialist at grade GS-11.[2] Beginning in September 1952, he sought a reclassification of his position to a GS-12. These efforts were repeatedly supported by his superiors in the Library, but the Civil Service Commission for several years refused to grant its approval, ruling that the position was correctly classified.[3] Eventually, in December 1958, the Commission relented, and appellant's position was changed to a GS-12. In February 1961, appellant began a campaign to have the same position upgraded to a GS-13. Although that request was denied by a classification officer in the Library of Congress, the Library's Assistant Director of Personnel decided to reclassify the position on the basis of an "incumbency reallocation."[4] Appellant received his promotion to a GS-13 in April 1965.
 
 
 9
 In April 1971, appellant began his efforts to have his position reclassified to a GS-15. A review of his duties and responsibilities was conducted by James Lee, a Position Classification Officer,[5] who reached the conclusion that the position was properly rated as a GS-13, and that Civil Service Commission standards accurately described the work appellant in fact performed. Nevertheless, the Library proceeded to request the Civil Service Commission to render an advisory opinion concerning the proper grade for appellant's position. The Commission responded that there was no basis for classifying the job above GS-13,[6] and the Library accordingly made its decision not to effect a further reclassification. Although a review process was apparently available, appellant did not avail himself of the opportunity it provided[7] but instead filed an administrative discrimination complaint. An equal opportunity counselor and the agency's Equal Opportunity Officer determined after investigation that appellant's complaint was more appropriately regarded as a classification matter in the classification office and took no action. This suit in the District Court followed.
 
 
 10
 Appellant's position in the classified service is relatively unique, and the basic issue here is whether it was properly classified.
 
 
 11
 Under the Classification Act of 1949, 5 U.S.C. § 5101 et seq., the Civil Service Commission[8] has the responsibility for establishing standards for placing positions in their proper classes and grades. The Commission evaluated appellant's position and found that there was no basis for classifying it above GS-13.[9] Appellant concedes that the Civil Service classification series for visual information specialists on its face covers only grades through GS-12, but he argues that, notwithstanding that general limitation, and notwithstanding the more specific Commission advisory ruling that his position was appropriately classified at no more than a GS-13, the Library was guilty of discrimination because it failed to make an exception for his benefit.[10]
 
 
 12
 While the Library of Congress may not have been bound as a matter of law by the Civil Service Commission decision, the record does not reveal any factual justification for a Library departure from the Commission's determination. Certainly the District Court could not be said to have erred when it failed to find discrimination based on the Library's refusal to disregard a Civil Service Commission opinion with respect to the appropriate classification of appellant's position.
 
 
 13
 Appellant contends that the classification reason given for the failure to promote him was merely pretextual[11] and conceals underlying discriminatory purposes. In this regard, he argues that he performed the same kind of work as white employees who were classified at grade GS-15,[12] that he had been performing supervisory functions and should have been reclassified for that reason, and that he was entitled to an inference of discrimination on the basis of statistics.
 
 
 14
 Appellant is a high school graduate working in the relatively non-professional field of a visual information specialist.[13] To be sure, the positions of various types of "senior specialists" and "analysts" are classified at grade GS-15, but these positions, as appellant's classification officer found, are not comparable to the one appellant holds. Such specialists and analysts are frequently among the top experts in academic research submitted to the Congress on public policy matters,[14] and they usually have graduate degrees. Visual information specialists, on the other hand, are typically classified at grades GS-11 to GS-13.[15]
 
 
 15
 Appellant's claim that he is entitled to reclassification because he was or should have been exercising supervisory duties is unfounded. The Coordinator of Research, who supervised most of appellant's work and had the initial responsibility for describing his position, determined that appellant has no significant supervisory or administrative duties. In 1950, appellant did have one assistant, but that individual was dismissed after a few months, along with a number of other employees, on account of a congressionally-mandated budget cut. This brief and narrow supervisory experience hardly justifies a finding of discriminatory classification well over twenty years later.
 
 
 16
 The District Court found the statistical evidence to be inconclusive. We agree. One expert testified that there was a consistent pattern of disparity between black and non-black employees in the Library of Congress. Another expert, examining the same data, found no disparity in promotion rates between blacks and non-blacks. At its most favorable to appellant,[16] the evidence does no more than to establish a prima facie case of discrimination[17] within the meaning of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) and Hackley v. Roudebush, 171 U.S.App.D.C. 376, 520 F.2d 108 (1975). We perceive no basis for holding incorrect the District Court's conclusions, based upon his findings of subsidiary facts,[18] that this prima facie case was rebutted by the Library, and that appellant had failed to show that the non-discriminatory reasons given by that agency constituted a pretext for discrimination. The judgment of the District Court is accordingly
 
 
 17
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976)
 
 
 [1]
 The only other assertion of error that requires discussion is the claim that the District Court improperly refused to certify the suit as a class action under Rule 23(a)(3), F.R.Civ.P. An interlocutory appeal from an earlier refusal of Judge Jones to certify a class action in this case was dismissed by this court. Williams v. Mumford, 167 U.S.App.D.C. 125, 511 F.2d 363 (1975), cert. denied, 423 U.S. 828, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975). More recently, Judge Oberdorfer found that the claims of appellant and those of one Joslyn Williams, whose case has since been severed, were not typical of the claims of the class they sought to represent. Appellant essentially contends that his position was incorrectly classified, while Williams' claim relates to an allegedly improper penalty for falsification of an employment application. The fact situations involving these individuals are relatively unique and not typical of any class (Taylor v. Safeway Stores, Inc., 524 F.2d 263 (10th Cir. 1975); Wright v. Stone Container Corp., 524 F.2d 1058 (8th Cir. 1975); Koos v. First National Bank of Peoria, 496 F.2d 1162, 1164-65 (7th Cir. 1974); Wright & Miller, Federal Practice and Procedure: Civil § 1764 (2d ed. 1972)), and there is no basis for overturning the exercise of the District Court's discretion in failing to make a class certification. City of New York v. International Pipe & Ceramics Corp., 410 F.2d 295, 298 (2d Cir. 1969); Peterson v. Oklahoma City Housing Authority, 545 F.2d 1270, 1273 (10th Cir. 1976); Price v. Lucky Stores, Inc., 501 F.2d 1177 (9th Cir. 1974)
 
 
 [2]
 Appellant originally worked in the Library's General Research Section. He was later transferred to the Congressional Research Service where he has remained since
 
 
 [3]
 The decision was supported by several layers of decisionmakers in the Civil Service Commission, including its Board of Appeals and Review
 
 
 [4]
 An incumbency reallocation is the reclassification of a position at a higher than normal level because of the strengths the incumbent brings to the particular job
 
 
 [5]
 Lee, who works in the Library's Classification Office, is black
 
 
 [6]
 The Commission noted that non-supervisory positions above grade GS-12 are not common in appellant's job series
 
 
 [7]
 The District Court found that arguably appellant failed to exhaust his administrative remedies by failing to pursue classification appeals. See Haneke v. Secretary of Health, Education and Welfare, 175 U.S.App.D.C. 329, 535 F.2d 1291 (1976). Nevertheless, it considered appellant's racial discrimination claims on the merits
 
 
 [8]
 Now the Office of Personnel Management
 
 
 [9]
 Appellant would equate this kind of classification analysis with the subjective judgments made by white supervisors that have been regarded as possible vehicles for discrimination. See, e.g., James v. Stockham Valves & Fittings Co., 559 F.2d 310, 345 (5th Cir. 1977), cert. denied, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1975); Pettway v. American Cast Iron Co., 494 F.2d 211, 232 (5th Cir. 1974). This argument lacks merit for several reasons: (1) general classification decisions are unlike individual, subjective hiring or promotion decisions; (2) the basic judgment here was not made by appellee but by the Civil Service Commission which is not a party and has not been charged with discrimination; and (3) to the extent that the Library was involved, its principal judgment concerning appellant's proper classification was expressed by a black employee
 
 
 [10]
 Appellant also argues that the fault lies with his position description, and that he was the only person competent to determine the scope of his duties and responsibilities. The District Court rightly rejected this claim
 
 
 [11]
 The District Court assumed for purposes of analysis, and so do we, that appellant had made out a prima facie case of discrimination, and that the issue was whether legitimate, nondiscriminatory reasons existed for the Library's failure to promote appellant, as distinguished from reasons which were mere pretexts for discrimination
 
 
 [12]
 Appellant also makes the related argument that he should have been included in the Library's automatic promotion plan. That plan, which is aimed primarily at the agency's professional employees, was not applied to appellant because his job is "unique." The evidence showed that other black employees in other job classifications were included in the plan
 
 
 [13]
 According to the Coordinator of Research of the Congressional Research Service, as a visual information specialist appellant provides "visual, graphic, design, geometric and artistic skill in the form of statistical or organizational charts, lettered tables, maps, illustrations, inscriptions, in ornamental lettering styles, layouts ready for the printer, . . . visual information presentations" and similar services, but "he is rarely, if ever, called upon to do economic, social, scientific or other forms of subject discipline analysis."
 
 
 [14]
 We need not decide whether salary distinctions between experts in graphics and experts in such fields as economics, sociology, and other academic pursuits are appropriate as a matter of personnel policy. Suffice it to say that such distinctions cannot be regarded as racially discriminatory
 
 
 [15]
 There is an indication in the evidence that there is one visual information specialist at another government agency (Department of Commerce) whose position is classified as a GS-15. That particular employee appears to have far broader responsibilities than appellant. In any event, that one classification, which may violate Civil Service standards, cannot form the norm for all similar jobs throughout the federal service
 
 
 [16]
 The government's expert, unlike the witness produced by appellant, examined possible disparities in the frequency with which blacks and whites were promoted, and he concluded that for all employees, regardless of date of hire, no consistent disparity in promotion rates could be established
 
 
 [17]
 With regard to the statistics, appellant urges upon us the recent decision of this court in Davis v. Califano, 613 F.2d 957. The court there held that statistical evidence may establish a prima facie case of individual discrimination, recognizing, however, that, as with any circumstantial evidence, the usefulness of statistical evidence depends on all the surrounding facts and circumstances (p. 962). In any event, the District Court here concluded that there was no violation of Title VII even if it be assumed that a prima facie case of discrimination was established by the statistics
 
 
 [18]
 The District Court's findings of fact may of course not be set aside unless they are clearly erroneous. Rule 52(a), F.R.Civ.P.; Kinsey v. First Regional Securities, Inc., 181 U.S.App.D.C. 207, 557 F.2d 830 (1977). This rule applies to design, motive, and intent. United States v. Yellow Cab Co., 338 U.S. 338, 341, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949)